**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ] | |
| ] | **CRIMINAL NO:   4:05-CR-00138** |
| vs. ] | |
| ] | **(JUDGE JONES)** |
| ] | |
| ] | |
| ] | |
| **MARK BAKER** ] | **Electronically Filed** |
| ] | |

**DEFENDANT'S PRE SENTENCE MEMORANDUM**

AND NOW comes Douglas B. Chester, Esq., counsel for Mark Baker, who, pursuant to the Court's Order following the pre-sentence conference, files the within Defendant's Pre Sentence Memorandum addressing issues arising under 18 U.S.C. §3553, and in support of which avers as follows:

PROCEDURAL BACKGROUND

Mark Baker is a 21-year old student in his Junior year at the Pennsylvania State University in State College, Pennsylvania.  He is before the Court having entered a negotiated plea to a one-count information charging simple possession of child pornography.  A pre-sentence report has been completed, and the matter is presently scheduled for sentencing for 11:15 a.m. on November 23, 2005.  At the time of the pre-sentence conference in August, 2005, Counsel sought and was granted permission of the Court to have a psychosexual evaluation done on Mr. Baker.  The purpose of obtaining this report was to provide a clearer picture to the Court of how this incident came about, and to assess what risk, if any, Mr. Baker poses to society at large.

A preliminary draft of that report was received by counsel on November 11, 2005, and the final draft of that report was received three days later, late in the day on Monday, November

14, 2005. That report was forwarded to the U.S. Attorney on the following morning, Tuesday, November 15, 2005. This pre-sentence memorandum follows.

## THE REPORT

Mark Baker was examined by Dr. Ralph Wahl Battinieri, Ph.D., D.C.S.W. The examination took place on September 17, 2005, lasting the better part of a day. In addition, Dr. Battinieri was provided with documentation from the case consisting of the pre-sentence memorandum prepared by Eric Noll of U.S. Probation, FBI reports on the investigation prepared by agents Kyle and Mooney, a handwritten confession statement prepared by Mark Baker himself during and interview with Special Agents Kyle & Mooney, and various other documents downloaded from the computers involved, evidencing Mr. Baker's participation in Yahoo! chat rooms and similar forums. Dr. Battinieri was given unrestricted access to Defense Counsel's file, and also had access to the files of counselors that Mr. Baker had been seeing since before the entry of his plea. So far as counsel is aware, there is no information whatsoever which was denied or placed off limits to Dr. Battinieri; to the contrary, all those involved have offered Dr. Battinieri full and unequivocal co-operation during the course of his examination. Mark Baker waived any and all confidentiality issues so that this report might be fully researched, prepared, and presented to the Court, and his co-operation in the preparation of the report was both complete and candid.

Dr. Battinieri states that his clinical findings are within a reasonable degree of psychological certainty, and that his recommendations to the Court are responsive to the evaluation he has made.

## THE RECOMMENDED GUIDELINE RANGE

Mr. Baker has never had any prior contact with law enforcement. He has no criminal record whatsoever. His Criminal History Category has been determined to be "I". The pre-sentence report calculated an offense level of 18. Matching C.H.C. "I" with offense level 18 yields a presumptive sentencing range of 27 to 33 months.

This range is in accord with the plea negotiations which took place prior to the filing of the information to which Mr. Baker pled guilty. It should be noted that the plea negotiations in this case stretched over a period of thirteen months, that at times they were very intense, and that the U.S. Attorney conducted those negotiations with exemplary vigor. Counsel for Mr. Baker attempted to do the same. The plea agreement as finally reached between the U.S. Attorney and counsel for the Defendant specified a sentencing range of 27-33 months, with specific agreement that the Court could subject the Defendant to a period of supervision of up to fifteen years.

An explanation of this somewhat unusual and lengthy period of supervision is warranted. The search of Mr. Baker's rooms at The Pennsylvania State University Campus in State College which led to this case took place in February of 2004. Present counsel was consulted privately by Mr. Baker & his parents shortly thereafter. As they were unable to afford to hire private counsel, and since, as a college student, Mr. Baker would qualify as indigent, they were directed to the Federal Public Defender's Office in Williamsport. Present counsel also contacted the Public Defender's office, and indicated willingness to accept this case on a C.J.A. Panel basis, due to familiarity with the client and facts.

Counsel has maintained an attorney-client relationship with Mr. Baker for just under two years, and in that time has sat for four or five hours on several different occasions discussing the case, the circumstances, and the legal framework. During that time we have also exchanged over a hundred messages by electronic mail, some of which were very lengthy. It has been Counsel's unwavering belief, since his initial interviews with Mr. Baker in the winter of 2004, that Mr. Baker does not fit the "mold" of the pedophile, and that he is no threat to children.

One of the paramount responsibilities of the U.S. Attorney in negotiating plea bargains is to ensure the protection of the public. The U.S. Attorney's devotion to his public responsibility was clearly reflected in the vigorous debate over the terms of the plea in this case, as was Defense Counsel's equally strong belief that Mr. Baker was not a nascent pedophile. These issues were finally reconciled by trading a longer period of supervision after release for incarceration for shorter period of incarceration. That trade-off was acceptable to both sides, and was ultimately the basis for the entry of this plea with the unusual provision of a 15 year probation period. During this period, Mr. Baker would be subject to having his computer searched at any time. If contraband images turned up, he could be appropriately punished. It is counsel's belief that this simply will not happen.

REQUEST FOR DOWNWARD DEPARTURE

There are mitigating circumstances in this case which take this situation out of the mainstream of the factors considered in the sentencing guidelines, and make the strict application of the guidelines unduly harsh in imposing sentence.  Because of those mitigating factors, the Defense seeks a downward departure from the Court pursuant to 18 U.S.C. §3553, U.S.S.G. 5K2.0, *et seq*.

The Defense seeks a probationary sentence from the Court, with provisions for continued counseling and therapy, supervision of Mr. Baker's computer activity to ensure that there is no recurrence of contact with child pornography, and supervision of Mr. Baker's personal life to ensure that he continues his promising academic career and that there is no inappropriate contact with children.  For the protection of the public, this duration of this supervision should be up to the Court.  As will be argued below, it is our belief that a probationary sentence will answer the needs of justice in terms of punishment appropriate for the crime, rehabilitation, and the protection of the public.  At the same time, such a sentence would avoid the complete devastation of Mr. Baker's life, which, aside from this incident, is off to a promising start.

The circumstances which support such a downward departure may be summarized as follows:

      I.  Mr. Baker's educational background and potential.

      II.  A sentence of 27 to 33 months in Federal Prison is disproportionate to the actual factual circumstances of the crime committed.

      III.  The Offense Level of 18 as determined by U.S. Probation includes three enhancements of 2 levels each, which were neither admitted in the Defendant's Statement nor allocuted to at the Guilty Plea.

      IV.  Mr. Baker does not fit the profile of a nascent pedophile, and had no contact with children during the period he possessed child pornography.  His confinement in Federal Prison for a period of years is not necessary for the protection of children, or the public in general.

      V.  The conduct which brings Mr. Baker before the Court was aberrant, and inconsistent with the rest of his life.  He meets the statutory criteria set forth in U.S.S.G. §5K2.20 for consideration of downward departure on this basis.

I. <u>Mr. Baker's educational background and potential</u>.

      The first circumstance which supports a significant downward departure is the educational level and maturity of the Defendant.  Mr. Baker is presently 21 years old.  He graduated 62nd in a class of 1025 at North Penn High School in Lansdale, Pa., in June of 2002.  When this matter began in the early months of 2004, Mr. Baker was a second-term Freshman at the Pennsylvania State University's main campus in State College.  He has chosen Architecture as a major, which is one of the most demanding curriculums offered at the University Park Campus.  Despite the prospect of a Federal Criminal conviction and time in a Federal Prison looming over his shoulder, Mr. Baker has continued to apply himself to his studies, and maintains grades of "A" and "B" in his major courses.  With the permission of the Court, Probation and the U.S. Attorney, he was in October of this year able to travel with one of his architecture classes to Panama City, Panama, to participate in an ongoing project in which Penn State Architecture Students are helping redesign and rebuild decaying parts of Panama City.  This trip proceeded without incident, and Mr. Baker is safely back within the jurisdiction of the Court.  All other things being equal, Mr. Baker would expect to graduate in the fall of 2007.  It is very likely that upon completion of his undergraduate studies, Mr. Baker will seek further, graduate-level education.  There can be no question that Mr. Baker has demonstrated a willingness to buckle-down and work, in the face of looming adversity, that is far above the average.  There can be no question that he has the potential and intellectual capacity to succeed in his chosen field.

      All of this potential, and all of this capacity, will be lost if he is sentenced to incarceration in the Federal Prison system.

II.  <u>The statutory punishment for the crime as set forth in the Guidelines is excessive when compared to the factual circumstances of the crime.</u>

Mr. Baker, as teenager with access to the Internet, downloaded pornography onto his home computer.  He was introduced to this practice when he was about thirteen years old  by a cousin about two years older than himself.  The pornography that he downloaded was of diverse types; images of ordinary adult sex, oral sex, and lesbian sex were present, as well as images of bi-sexuality, masturbatory sex, and ordinary photos of unclothed female figures.  There was no fixation on underage girls or pedophillic images, *per se*, although Mr. Baker candidly admitted to the investigating F.B.I. agents that he was interested in images of girls his own age.

It is significant that many of the images which were on Mr. Baker's computer fit the definition of "child pornography" only in that they are of girls under the age of 18 years.  If he, as an 18 year-old college freshman, was dating a seventeen year-old high school senior, no-one would be concerned, offended, or would even think twice about the matter.  His interest in admittedly underage girls, during this period in his life, was age-appropriate.  This fact alone separates Mr. Baker's case from that of a defendant forty or fifty years of age.  It is entirely normal for a young man of seventeen, eighteen or nineteen years of age to be interested in girls that are fifteen, sixteen or seventeen.  It is abnormal for a man thirty years older to be similarly interested.

Of all the images that were downloaded onto the computers in this case, only a small fraction are images of underage or pre-pubescent girls.  There were approximately 750 pornographic images on the two computers, which had been accumulated over a period of several years.  Of these images, approximately fifty are clearly identifiable as child pornography, and another thirty or so are questionable.  Mr. Baker stated to investigators that he did not actively seek out images of children or underage girls, but just accepted them as he encountered them.  There is no evidence from the computers of any sort of "fixation" or focus on this particular class of images.  The images were not cataloged or grouped in any way which would indicate a special interest in one class of images over another, or that would make access to a particular group of images easier.  The images were randomly stored on the computer as individual "JPEG" and image files.  Although some of the stored files had suggestive file names, there was no evidence that Mr. Baker sorted or renamed the files to better identify the content of

a particular file.

Although he participated in chat rooms, there is no evidence whatsoever that Mr. Baker used his computer and Internet contacts to "reach out" and make contact with underage girls. None of the saved emails or chat room dialogs show any attempt by Mr. Baker to arrange personal contact with any of the other chat room participants. None of the emails or chat room dialogs show Mr. Baker soliciting photos, items of clothing or otherwise trying to encourage any improper behavior with the chat room participants.

There is no evidence whatsoever that Mr. Baker used the computer to manipulate any of these images, or in any way attempted to produce any images on his own. During the searches of his dormitory room and home in Lansdale, no physical images were found. Mr. Baker did not print out or otherwise reduces the computer images to tangible format, either as "thumbnails" or as full-page print-outs. Similarly, no Polaroid or other photographic images were found.

The searches of Mr. Baker's dormitory room and home did not produce any books, publications or other printed matter. No pornographic books were found. None of the borderline-pedophillic "coffee table" books of photographs which disguise photographs of naked children as "art" were discovered. No "nudist" magazines or similar publications were found.

None of the images involved in this case involve any depictions of forced sex, rape, domination/submission, or violence involving adults or children. There are no deviant sexual images. There are no video or "streaming" image files of either adults or children. There are no cartoon images, either as individual images or short video files.

There is nothing to indicate that Mr. Baker's interest in Internet pornography in general, or in child/adolescent pornography, was obsessive or compulsive. His interest in this material did not prevent him from functioning at a very high level in his High School and College activities. It did not interfere with his employment. It remained at such a level that it went undetected in his home environment for a period of over six years.

The evidence taken from the computers and Mr. Baker's environment shows that he simply looked at images of pornography available on the Internet on his computers.

III. <u>The Offense Level of 18 as determined by U.S. Probation includes three enhancements of 2 levels each, which were neither admitted in the Defendant's Statement nor allocuted to at the Guilty Plea.</u>

Mr. Baker entered a plea to a one-count information charging simple possession of images of child pornography, with the number of images unspecified. Pursuant to an understanding with the U.S. Attorney, at the time the plea was entered, Mr. Baker allocuted only to the possession of up to ten images. Neither the presence of images of girls under the age of six, nor the use of a computer were mentioned during the allocution.

From the outset of this case, Mr. Baker has fully co-operated with authorities. He readily confessed his involvement to investigating officers. He discussed his use of the computer and his involvement in chat rooms candidly with the investigating officers, U.S. Probation, and his counsel both before and after the entry of the plea. The contents of the two computers has been reviewed, image by image, by defense counsel under the supervision of Special Agent Kyle. The number of images which arguably constitute child pornography is somewhere between ten and one hundred seventy-five. There were approximately forty images which were unquestionably child pornography. Another forty or so images were difficult to classify, either due to the difficulty in judging the age of the person depicted, or due to the fact that neither the breasts nor genitalia were fully exposed. There were only two or three images which are unquestionably of the genitals of children six year old or younger. Both Mr. Baker and Counsel have been painfully candid in admitting to the Court that these are the facts, but the legal posture is that these facts have neither been admitted during allocution, nor proven beyond a reasonable doubt.

The pre-sentence report as prepared by U.S. Probation gives Mr. Baker a two-level enhancement for each of three factors: the pre-pubescent images (Paragraph 10), the use of a computer (Paragraph 11) and the number of images above 10 (Paragraph 12). These three enhancements, taken together, boost Mr. Baker's Offense Level to 18.

No objections to the pre-sentence report were filed contesting these enhancements, because these are the plain facts which were developed in the investigation, and because the resulting sentencing range, 27-33 months, was the range which the U.S. Attorney and Defense Counsel had agreed to in negotiating the plea bargain.

If Mr. Baker's offense level is computed without these facts, he arrives at a level of 12. This offense level, although yielding an excessively harsh result, is much more reflective of the actual crime committed here.

IV. <u>Mr. Baker does not fit the profile of a nascent pedophile, and had no contact with children during the period he possessed child pornography.  His confinement in Federal Prison for a period of years is not necessary for the protection of children, or the public in general.</u>

Mr. Baker did not engage in any of the activities which are part of the "profile" of the pedophile, or which evidence an unhealthy interest in children and childhood sexuality.

He did not earn money babysitting; he earned tuition money working during school vacations at stores like Lowe's, Sears, Home Depot and Target Stores.  None of these stores specifically target children as customers, seek to draw children, or deal in children's products except as a minor portion of their stock-in-trade.   The sole exception to this is Target Stores, which is a general merchandise discount establishment, but even in the case of Target, housewares, clothing and similar items constitute the majority of the stock.  No-one seeking to be employed in contact with children would choose one of these employers.  His specific employment by these stores did not bring him into contact with children.

Mr. Baker did not seek out employment which would bring him into contact with children or underage girls.  He did not seek work at "Toys 'R' Us" or similar retail establishments which cater to children, nor did he work at an arcade or fast-food restaurant where he might likely contact children.

Mr. Baker was not involved with any sort of church groups or Sunday School activities which would bring him into contact with children, supervised or otherwise.  Similarly, Mr. Baker was not involved with the Boy Scouts, or any similar secular activity which would bring him into contact with children.  During High School and College he did not participate in any "tutoring" or outreach programs, or any other activities which would bring him into contact with children, such as a "Big Brother" program.  He did not coach or otherwise participate in any sports such as Little League, softball, Youth Hockey, or any similar sports activity which involved children.

There is no indication anywhere in the record that any complaint of inappropriate behavior with peers or younger children has ever been lodged against Mr. Baker. He has no history whatsoever of violent, sexual or predatory activity of any sort. His High School and College disciplinary records are spotless. His history does not demonstrate that he ever sought out any opportunity to be in contact with children, or that he has ever victimized anyone, in any way.

This history is in sharp contrast to the history and profile of a pedophile, either nascent or fully developed. The pedophile shows a pattern. The pedophile seeks contact with children. The pedophile arranges his life, his work, his daily activities so that he can see and have contact with children. The pedophile undertakes volunteer work which brings him into contact with children in a socially-acceptable manner. The pedophile is a Scout Master. He tutors children after school. He conducts Sunday School classes and goes on Church trips. He's a "Big Brother". He coaches Little League or Youth Hockey. He works at a job which involves contact with children. The pedophile seeks out and collects books and literature which stimulate him. The pedophile collects pornographic images which stimulate him, and shows no interest in other types of pornography. The pedophile's desire for erotic stimulation by images of children & adolescents increases over time. The pedophile seeks out and maintains contact with other pedophiles, in order to exchange stimulating material. There is a significant age differential between the pedophile and the objects of his fascination.

This is the profile of a pedophile.

This is not the profile of Mark Baker.

Dr. Battinieri carefully addresses this point in his report. He went into great depth in analyzing Mr. Baker's psychosexual history and development. He concluded, within a reasonable degree of psychological certainty, that Mr. Baker does not fit the profile of a pedophile, either nascent or full-blown.

Given that this is the condition of the Defendant, confining Mr. Baker to a Federal Prison for a period in excess of two years, as recommended under the Guidelines, will not serve to protect the public, and is an unnecessarily harsh result.

V.  <u>The conduct which brings Mr. Baker before the Court was aberrant, and inconsistent with the rest of his life.  He meets the statutory criteria set forth in U.S.S.G. §5K2.20 for consideration of downward departure on this basis.</u>

U.S.S.G. §5K2.20 addresses aberrant behavior.  It sets out five criteria which would prohibit the use of this downward departure.  They are: 1) Serious bodily injury or death; 2) The discharge or use of a firearm or dangerous weapon;  3) The instant offense is a serious drug trafficking offense;  4) More than one Criminal History Point and  5) Any prior Federal or State felony conviction, whether or not counted in determining Criminal History Category.

Mr. Bakers's case does not trip any of these prohibitions.  This case does not involved serious bodily injury or death.  There was no firearm or dangerous weapon involved in any way.  The instant offense has nothing whatsoever to do with the possession of, or trafficking in, drugs.  Mr. Baker has no criminal history points at all, and he has never been convicted of any felony (or any misdemeanor) anywhere.  Pursuant to the explicit limitations set forth in the guidelines, Mr. Baker at least qualifies for consideration under this section.

Aberrant behavior is behavior out of context.  It is behavior that does not fit the pattern.  In the context of this young man's life, it is respectfully argued that the behavior which brought him to the Court is non-typical of Mr. Baker, and it is a dangerously unfortunate blot on an otherwise spotless record.  He has had no previous encounters with the law.  He has no history of drug or alcohol use or abuse.  He maintained an excellent academic record throughout his time at North Penn High School in Lansdale, Pa., where he graduated 62nd in a class of 1,025 students.  He has  worked at a number of retail stores, including Lowe's, Home Depot, Target & Sears, during his school vacations to earn tuition money.  He has maintained a grade point average of 3.38 in a demanding curriculum at Penn State.

Dr. Battinieri documents Mark Baker's difficulties in growing up, and attributes his interest in Internet pornography to a "...maladaptive attempt to adjust to the multiple sources of stress he experienced throughout his adolescence."

Dr. Battinieri's conclusions indicate that Mr. Baker's interest in, and possession of, pornography was transitory in nature.  It is his opinion, to a reasonable degree of psychological certainty, that  "The behaviors which have brought Mr. Baker to the attention of the Court are aberrant to his personality, and unreflective of core beliefs, values, and his general pattern of

behavior."

Given this record and these conclusions, it is argued that neither society nor Mr. Baker will be served by incarcerating him in a Federal Prison, however benign, for 27 months. It is argued further that this guideline range, when compared to the totality of the circumstances of this case, is an excessively harsh punishment.

When all of the circumstances are taken into account, what Mark Baker did was look at pictures on a computer screen. He did not produce the pictures. He did not disseminate the pictures. He did not print out the pictures. He did not attempt to act out on whatever fantasies he created. He simply looked at pornographic images, which is something that the vast majority of young men do, at one time or another. A fraction of those images constitute child pornography. He did not know, and the overwhelming majority of people who look at images on the Internet do not know, that simply downloading such an image into a computer is a federal crime with a five year mandatory prison sentence.

Sentencing this young man according to the Guidelines will not simply deduct 27 months from this young man's life. It will have effects which will reverberate down the next twenty, thirty or forty years of this young man's productive working life. As it is, he already has a Federal Felony conviction on his record. Is the continuing damage and punishment to this young man really justified because he, in ignorance, between the ages of fourteen and eighteen, simply downloaded and looked at pictures of underage girls?

## DR. BATTINIERI'S REPORT

The full report of Dr. Battinieri was received by counsel in Microsoft Word format. The report has been converted to a "pdf" file for purposes of filing, and is attached hereto as an Exhibit in that format. Hard copy of the report will also be sent directly to the Court. The report has been conveyed to the U.S. Attorney by electronic mail transfer of the Word format file on Tuesday morning, November 15th, 2005.

CONCLUSION

It is respectfully requested that the Court depart downwards from the Guideline sentence in this unique situation, and place Mr. Baker under the supervision of the U.S. Probation Office for a period of years that will satisfy the Court that the interests of society are protected, and subject to the recommendations and restrictions set forth in Dr. Battinieri's report for counseling and continued therapy.

BY:

*-s-*
Douglas B. Chester, Esq,
For Mark Baker

Douglas B. Chester, Esq.,
#33865
P.O. Box 160
122 Maple Lane
Spring Mills, Pa.,16875
814-422-8940 (Office)
814-422-8010 (Fax)
dbchester@aol.com